VANITA B. STANBACK v. FRED J. STANBACK, JR.

No. 7719SC610

(Filed 1 August 1978)

1. **Contracts § 29.3— breach of contract—special or consequential damages**

   To recover special or consequential damages in a breach of contract action, plaintiff must prove that such damages were in fact caused by the breach, that the amount of such damages can be proved with a reasonable degree of certainty, and that the damages were within the contemplation of the parties at the time they contracted.

2. **Contracts § 29.3— breach of separation agreement provision for payment of taxes—no special damages**

   Defendant husband's breach of a provision of a separation agreement that he would pay any difference in the plaintiff wife's income taxes resulting from her inability to deduct counsel fees paid to her attorneys, which led to a lien on her home and its advertisement for sale, was not the breach of a "personal" contract provision for which the wife could recover special damages for mental anguish; nor could the wife recover special damages for loss of reputation in the community allegedly resulting from such breach.

3. **Contracts § 29.3; Damages § 12.1— breach of contract—punitive damages**

   Plaintiff's allegation that defendant wrongfully and willfully breached a provision of a separation agreement requiring him to pay any increase in plaintiff's income taxes resulting from her inability to deduct counsel fees paid to her attorneys was insufficient as a basis for punitive damages.

4. **Process § 19— abuse of process—insufficient allegations**

   Plaintiff's complaint was insufficient to allege abuse of process where it sufficiently alleged ulterior purpose but failed to allege any bent or inappropriate act in an otherwise proper proceeding.

5. **Malicious Prosecution § 8— termination in plaintiff's favor—insufficient allegation**

   Plaintiff's complaint was insufficient to state a claim for relief for malicious prosecution where it failed to allege termination of the prior action in plaintiff's favor but alleged only that "the action of the defendant against the plaintiff was dismissed by the court."

APPEAL by plaintiff from *Rousseau, Judge.* Order entered 15 April 1977, in Superior Court, ROWAN County. Heard in the Court of Appeals 26 April 1978.

Plaintiff-wife initiated this contract action to recover actual, consequential and punitive damages from defendant. The complaint alleges that defendant-husband breached part of their

separation agreement, a supplementary letter-agreement given in consideration of the formal separation agreement's provision allocating the burden of payment to wife's counsel to the wife and increasing husband's periodic payments of 25% of the wife's attorneys' fees. The supplementary agreement was an agreement between husband's and wife's attorneys, and reads as follows:

"We agree that if Vanita Stanback is unable to deduct the fees she is required to pay . . . during 1968 that Fred Stanback will pay to her . . . the difference in the federal and state income tax that she is required to pay by virtue of being unable to make this deduction for attorneys' fees.

It is understood that a valid effort will be made by Mrs. Stanback to claim such deductions and that the tax returns for 1968, both federal and state, will be prepared under the supervision of [the attorneys]."

Plaintiff paid her attorneys the $31,000.00 fee set by the court and claimed both federal and state income tax deductions. The I.R.S. audited her 1968 tax return and disallowed $28,500.00 of the $31,000.00 deduction, as did the North Carolina Department of Revenue. Defendant refused to pay her tax deficiency. As a result of this alleged breach of their agreement, plaintiff was unable to pay her deficiency, and the United States filed a lien against her property. In 1974 she borrowed $18,099.51, secured by deed of trust, to pay off her deficiency, plus interest, and avoid foreclosure. As she has been unable to pay off the loan, the lender is in the process of foreclosing on her home. The State of North Carolina, as a means of collecting her state income deficiency, issued a garnishment against defendant and, as a result of the garnishment, defendant paid $2,989.00, plus interest "using funds which he had agreed under the deed of separation between the parties to pay to the . . . [plaintiff] for support and maintenance." Plaintiff requested $250,000.00 consequential (special) damages to compensate for mental anguish and loss of reputation in the community, $100,000.00 punitive damages and some $18,000.00 actual general damages for defendant's breach.

Plaintiff joined in her complaint a second cause of action, alleging that defendant had initiated a federal suit against the I.R.S. and had joined her as codefendant for no legitimate reason but rather "to harass, embarrass and annoy the plaintiff . . . and

to cause her to incur expenses for the defense of said action and to cause her to forego her legal rights and remedies." This second count labeled the action "abuse of process" but summed up the action as follows:

> "4. The action of the defendant was malicious, wrongful and unjustified and without probable cause since his claim, if any, against the United States was unrelated to this separate obligation to the plaintiff herein and the defendant instituted the said action for an ulterior and wrongful purpose of restraining the plaintiff from exercising her rights."

The complaint further alleged that this action had been dismissed. The defendant moved for a G.S. 1A-1, Rule 12(b)(6) dismissal of both counts, and a Rule 37 dismissal for wilful failure to answer Rule 33 interrogatories. Plaintiff was permitted to amend the first count of her complaint to allege:

> "15(a). The special and consequential damages alleged in the preceding paragraphs of this complaint were within the contemplation of both parties at the time they made the contract as the probable result of the breach of it."

The trial court denied defendant's Rule 37 motion but granted his Rule 12(b)(6) motion to dismiss all of plaintiff's second count and to dismiss the first count's claims for consequential and punitive damages. From this order plaintiff appeals.

*Brinkley, Walser, McGirt & Miller by Walter F. Brinkley for plaintiff appellant.*

*Hudson, Petree, Stockton, Stockton & Robinson by Norwood Robinson and George L. Little, Jr.; and Kluttz & Hamlin by Clarence Kluttz for defendant appellee.*

CLARK, Judge.

The trial court did not dismiss plaintiff's claim for actual compensatory damages for breach of contract. The measure of such damages is the amount which will compensate the injured party for the loss which fulfillment of the promise could have prevented or which breach of it entailed. 3 Strong's N.C. Index, Contracts, § 29.2, p. 442. The traditional goal is to award a sum that will put the non-breaching party in as good a position as he would have

been had the contract been performed. Restatement, Contracts, § 329 (1932); Dobbs, Remedies, § 12.1, p. 786. A plaintiff is, of course, entitled to nominal damages automatically, upon proof of breach but may recover general compensatory damages as above measured upon proof by the greater weight of the evidence that such damages were incurred and were naturally and proximately caused by the breach of contract. *Builders Supply v. Midyette*, 274 N.C. 264, 162 S.E. 2d 507 (1968); 3 Strong's N.C. Index, Contracts, § 29, p. 440. Plaintiff Stanback may proceed to trial on her claim for actual compensatory damages incurred in the alleged breach of contract.

The issue raised by this appeal is whether the trial court erred in dismissing plaintiff's claims for special or consequential damages and for punitive damages. Such damages will sometimes be awarded, but such additional award has always been subject to rather stringent limitations. Proper pleading is crucial to such award. *Perkins v. Langdon*, 237 N.C. 159, 74 S.E. 2d 634 (1953); 3 Strong's N.C. Index, Contracts, § 29.3, p. 444.

[1] Plaintiff's claim for consequential or special damages amounting to $250,000.00 rests on the allegation that defendant's alleged breach of their separation agreement, which led to the lien on her home, and its advertisement for sale, with the concommitant publicity, caused her mental anguish, and damaged her reputation in the community. Plaintiff was permitted to amend her complaint to allege that such special mental anguish damages were within the contemplation of the parties at the time they contracted. It is well established that, to recover special or consequential damages in a contract action, plaintiff must prove that these damages were in fact caused by the breach, that the amount of such damages can be proved with a reasonable degree of certainty, and that the damages were within the "contemplation of the parties" at the time they contracted. Dobbs, Remedies, § 12.3, p. 798. The "contemplation of the parties" rule was established in the English case of *Hadley v. Baxendale*, 9 Exch. 341, 156 Eng. Rep. 145 (1854) and is a rule which is generally applied to preclude an award of special damages unless there is some evidence that the parties had not only "contemplated" them but had actually *allocated* the risk of breach to include them either implicitly or explicitly, or unless the breach is also a tort. Dobbs, Remedies, § 12.3, pp. 805-807; *Iron Works Co. v. Cotton Oil Co.*, 192 N.C.

442, 135 S.E. 343 (1926); *Builders v. Gadd*, 183 N.C. 447, 111 S.E. 771 (1922). Mere allegation that the parties contemplated the damages, as in the case *sub judice*, is clearly insufficient, absent allegation of facts to support the conclusional allegations. Plaintiff alleged no such facts but argues in her brief that the very nature of a separation agreement contemplates the mental anguish of the innocent party should breach occur. Plaintiff correctly argues the general law that the nature of the contract is an important key to determining when non-commercial special damages may be award-ed. Determination of the nature of the contract, of course, is a generalization of the "contemplation of the parties" rule and in-cludes an analysis of allocation of risk. *Carroll v. Rountree*, 34 N.C. App. 167, 174, 237 S.E. 2d 566, 571 (1977), states:

> ". . . The usual contract is commercial in nature and the pecuniary interests of the parties is the primary factor, since they relate to property, or to services to be rendered in con-nection with business, or to services to be rendered in profes-sional operations. Damages for mental anguish are, therefore, generally not recoverable. . . ."

But, *Lamm v. Shingleton*, 231 N.C. 10, 14, 55 S.E. 2d 810, 813 (1949), a case essentially involving an action for mental anguish special damages for breach of contract to furnish a casket and watertight vault, and to conduct the funeral and inter the body, listed the exceptions to the rule disallowing special damages for non-commercial injury in contract cases:

> ". . . [A]s a general rule, damages for mental anguish suffered by reason of the breach thereof are not recoverable. Some type of mental anguish, anxiety, or distress is apt to result from the breach of any contract which causes pecuniary loss. Yet damages therefor are deemed to be too remote to have been in the contemplation of the parties at the time the con-tract was entered into to be considered as an element of com-pensatory damages. . . .
>
> The rule is not absolute. Indeed, the trend of modern decisions tends to leave it in a state of flux. Some courts qualify the rule by holding that such damages are recoverable when the breach amounts in substance to a willful or independent tort or is accompanied by physical in-jury. . . . Still others treat the breach as an act of negligence

and decide the question as though the action were cast in tort, and thus confuse the issue. Thus, to some extent the courts have modified the common law rule.

In this process of modification a definite exception to the doctrine has developed. *Where the contract is personal in nature and the contractual duty or obligation is so coupled with matters of mental concern or solicitude, or with the sensibilities of the party to whom the duty is owed, that a breach of that duty will necessarily or reasonably result in mental anguish or suffering, and it should be known to the parties from the nature of the contract that such suffering will result from its breach, compensatory damages therefor may be recovered.* . . . In such case the party sought to be charged is presumed to have contracted with reference to the payment of damages of that character in the event such damages should accrue on account of his breach of the contract. . . ." [Emphasis added.]

The *Lamm* decision noted that such damages had been held recoverable in an action for breach of contract of marriage and for breach of contract to transmit a death message. It held mental anguish damages recoverable in its own case because "[t]he contract was *predominantly personal* in nature and no substantial pecuniary loss would follow its breach." The *Lamm* decision continued:

". . . Her [the widow-plaintiff's] mental concern, her sensibilities, and her solicitude were the prime considerations for the contract, and the contract itself was such as to put the defendants on notice that a failure on their part to inter the body properly would probably produce mental suffering on her part. It cannot be said, therefore, that such damages were not within the contemplation of the parties at the time the contract was made. . . ." 231 N.C. at 15, 55 S.E. 2d at 813-814.

The *Carroll* decision applied the *Lamm* test of the "personalness" of the contract in refusing to grant mental anguish damages in a case alleging that defendant's actions breached an implied contract he had with his client by releasing certain monies to plaintiff's former wife without receiving specified signed documents in return. The court stated:

"... While we readily concede that there could be contracts between attorney and client so personal in nature that the attorney could be assumed to have entered the contract with the knowledge that a failure to fulfill the obligation thereunder in the manner contemplated by the parties would naturally and probably result in the client's suffering mental anguish, we do not think the contract which is the subject of this action falls in that category. We do not regard this contract as predominantly personal in nature. It was necessary that plaintiff obtain his wife's signature to a deed in order that a farm inherited by him and other members of his family could be sold. Plaintiff's wife had brought an action against him for alimony. The fulfilling of the obligations under the contract in the manner agreed as alleged by plaintiff would have resulted in the sale of the farm and obtaining funds with which to settle the alimony action and obtain its dismissal and settle other property and marital rights of the parties. We agree that plaintiff is not entitled to recover damages for mental anguish." 34 N.C. App. at 174, 237 S.E. 2d at 572.

[2] In the case *sub judice*, the alleged promise to pay for increased tax was not a personal contract provision, but a regular, "commercial" one, a promise to pay monies to compensate for extra taxes paid. "The measure of damages for breach of a promise to pay a debt or a tax owed by the promisee personally, or charged upon his property, is the amount of such debt or tax, with interest. . . ." 22 Am. Jur. 2d, Damages, § 67, p. 101. The compensatory damages are limited to the actual "expectation" measure. We echo the *Carroll* court in making clear that we are not holding that a separation agreement provision may never be "personal" in nature, clearly impliedly contemplating special mental anguish damage in the event of breach. We hold that in the case *sub judice* the breach of a tax arrangement is not "personal." It is also clear that plaintiff could not recover special damage for non-commercial, non-tortious loss of reputation in the community. Such recovery is not allowed, absent special contract relationship such as that binding employers and employees. 22 Am. Jur. 2d, Damages, § 156, p. 225.

[3] Plaintiff's claim for punitive damages rests on her allegation that

"The acts and conduct of the defendant in failing to pay the amount of taxes assessed against the plaintiff has been wilful, malicious, calculated, deliberate, and purposeful, and with full knowledge of the consequences which would result, and was recklessly and irresponsibly done; and as a result of the acts and conduct of the defendant, the plaintiff is entitled to recover punitive damages . . . [of] $100,000.00."

*Carroll, supra,* reaffirms the general rule that punitive damages are never awarded as compensation but as punishment inflicted for intentional wrongdoing. *Allred v. Graves,* 261 N.C. 31, 134 S.E. 2d 186 (1964). Such intentional wrongdoing clearly must be something other than intentional breach of contract, for breaching must be permitted as a legitimate business risk, the breacher compensating for the breach by putting the other party in as good a position as he would have been had the breach not occurred. Although courts will force a breacher to compensate, the breaching itself is not "wrongful." "Wrongful" breach, such as permits a jury consideration of punitive dmages, is limited to breach of promise to marry, such a "personal" contract as would permit mental anguish damages, and breach of duty to serve the public imposed by law upon a public utility. *King v. Insurance Co.,* 273 N.C. 396, 159 S.E. 2d 891 (1968). If the breach is the result of tortious conduct, punitive damages may be awarded to punish the tortious conduct, but even then the conduct must be aggravated beyond that necessary to be merely tortious. *Newton v. Insurance Co.,* 291 N.C. 105, 229 S.E. 2d 297 (1976); *Oestreicher v. Stores, Inc.,* 290 N.C. 118, 225 S.E. 2d 797 (1976). Such aggravated tortious conduct was early defined to include fraud, malice, gross negligence, oppression, insult, rudeness, caprice or wilfulness. *Baker v. Winslow,* 184 N.C. 1, 113 S.E. 570 (1922). In the case *sub judice* plaintiff alleges no separate identifiable tortious conduct but merely alleges that the *contract* breach was wilful wrongful conduct, which allegation is insufficient as a base for punitive damages.

[4] Plaintiff's third argument attacks the trial court's dismissal of her second cause of action. It is clear that plaintiff's classification of this cause as "abuse of process" is erroneous. To allege satisfactorily abuse of process, plaintiff must allege facts tending to show (1) an ulterior purpose and (2) *a wilful act in the use of the process not proper in the regular conduct of the proceeding.*

Prosser, Torts (1971 ed.), § 121, p. 857; *Edwards v. Jenkins*, 247 N.C. 565, 101 S.E. 2d 410 (1958). Plaintiff's complaint alleges sufficient ulterior purpose, but nowhere alleges any bent or inappropriate act in an otherwise proper proceeding. But plaintiff's complaint does allege elements of malicious prosecution. Under our liberal pleading rules, a misclassification would not be fatal, provided the complaint put the defendant on notice as to the nature of the action against him. *Sutton v. Duke*, 277 N.C. 94, 176 S.E. 2d 161 (1970). Both malicious prosecution and abuse of process have the common element of an improper purpose in the use of the legal process, and there are many cases in which they overlap. Prosser, § 121, p. 857. In the leading English "abuse of process" case, the court denied the action of malicious prosecution, as the underlying case had not been terminated in the plaintiff's favor, but refused to permit its process to be misused to a bad end and found the defendant liable. *Grainger v. Hill*, 4 Bing. N.C. 212, 132 Eng. Rep. 769 (1838). Mere misclassifying is not herein fatal.

[5]    However, a malicious prosecution complaint must allege sufficient facts to show that the proceeding was initiated without probable cause, that the proceeding was terminated in the plaintiff's favor on the merits, that defendant brought the former action out of "malice," generally defined as improper purpose. Prosser, § 120, pp. 853-855. The complaint alleges malice, lack of probable cause, and ulterior purpose, although we note that the "facts" alleged to support these allegations are arguably insufficient. It does not allege termination in the plaintiff's favor, but only that "the action of the defendant against the plaintiff was dismissed by the court." Plaintiff includes in the record defendant's complaint in the federal case but enters nothing as to the nature of the dismissal. It is clear that the dismissal could have been granted for reasons other than a judgment for plaintiff on the merits and plaintiff's complaint is therefore deficient. Even though the complaint could have established a good cause of action for malicious prosecution regardless of its misclassification as "abuse of process," it did not do so, and the trial court correctly dismissed this second count. As the court is deemed to have examined the federal court complaint, a matter outside the pleading, the dismissal turns from a Rule 12(b)(6) to a Rule 56 dismissal, and is with prejudice.

The trial court order is

Affirmed.

Judges BRITT and ERWIN concur.